73754. ELLERBEE et al. v. INTERSTATE CONTRACT
CARRIER CORPORATION et al.

(360 SE2d 280)

BEASLEY, Judge.

Mrs. Ellerbee was injured in a 1981 accident with a tractor-trailer driven by Gambel. The tractor was owned by Smith, who apparently leased it to Interstate Contract Carrier Corporation. Bankers and Shippers Insurance Carrier of New York was the insurer for Interstate. The Ellerbees sued all four, the driver, the owner/lessor, the lessee, and the lessee's insurer.

Service on the first three, all but the insurer, was made on the Secretary of State, plaintiffs alleging that they were covered by the provisions of OCGA Title 46 as motor common carriers or motor contract carriers and had not designated agents for service in Georgia. The insurer was properly registered and served through its agent. The action went into default and was opened by the court. Thereafter, the four defendants answered and included insufficiency of service of process as a defense, a ground which persuaded the trial court to dismiss the suit.

1. In their fifth enumeration, the Ellerbees complain of the dismissal as to insurer Bankers. It had contended that, although it was properly served, dismissal of the other three defendants required its dismissal also, as it could not possibly have breached any legal duty owing to plaintiffs. Although not specified in the order, this is apparently the basis for the court's ruling in Bankers' favor.

We need only consider the status of the lessee Interstate and Bankers in order to determine whether the dismissal as to Bankers was proper. All seem to agree that Interstate is a motor common carrier and motor contract carrier and is so registered with the Georgia Public Service Commission. OCGA §§ 46-7-16 (a) (3) (common carriers) and 46-7-61 (a) (3) (contract carriers) provide that carriers engaged only in interstate commerce over Georgia highways must "[g]ive the bond or indemnity insurance prescribed by this article, . . ." The article requires that these carriers either post a bond or provide a policy of insurance "for the protection of the public against injuries proximately caused by the negligence of such motor carrier, its servants, or its agents." OCGA §§ 46-7-12 (a) (c); 46-7-58 (a) (c).

The policy issued by Bankers serves this purpose.

We will assume, as argued by defendants, that Interstate has not been properly served. Does this mandate that Bankers also be dismissed, as argued by defendants? It does not. OCGA §§ 46-7-12 (e) and 46-7-58 (e) both provide that if a policy of insurance is maintained, it is permissible to join the motor carrier and the insurance carrier in the same action, whether in contract or tort. Because the action against the insurance carrier is based on contract, with the public as the third party beneficiary of the contract, *Thomas v. Bobby Stevens &c. Contractors*, 165 Ga. App. 710, 711 (1) (302 SE2d 585) (1983), the only prerequisite to an action against the insurer is an "actionable injury"; this is not disputed here. *Thomas*, supra; see *Tuck v. Cummins Trucking Co.*, 171 Ga. App. 485, 487 (2) (320 SE2d 265) (1984); cf. *Currahee Constr. Co. v. Rabun County School Dist.*, 180 Ga. App. 471, 472 (349 SE2d 487) (1986). So it is that dismissal of the action against the insurer because of the failure to obtain service on its insured was error. *Griffin v. Johnson*, 157 Ga. App. 657, 658 (3) (278 SE2d 422) (1981).

2. (a) As to Interstate only, plaintiffs urge in enumeration four that any defense based on insufficiency of process has been waived. The complaint was filed on January 27, 1983, and went into default although all defendants received copies of the complaint and process. Defendants filed a demand for jury trial in April and a motion to open the default in May. It was granted in June, and two days later the answer for all defendants was filed.

Plaintiffs contend that waiver was effected by an affidavit filed by a claims supervisor for the insurer in support of the motion to open default stating, "each defendant provided us [Bankers] with timely notice of the above styled case and perfection of service." Assuming without deciding that the insurer's agent could make such an admission for its insured, there was no waiver.

Plaintiffs rely on OCGA §§ 24-3-30 and 24-4-24. The first section provides that any party may avail itself of allegations or admissions made in the pleadings of the other. This statute, however, applies only to admissions of fact and "is not applicable to an admission which is merely an opinion on the part of the party making it as to its legal effect." *Scott v. Jefferson*, 174 Ga. App. 651, 652 (1) (331 SE2d 1) (1985). The impression that service had been perfected was at best a lay opinion, not a fact, as to the legal effect of the delivery of the pleadings.

Since the second section, OCGA § 24-4-24, was not raised below, it will not be addressed on appeal. *Bogan v. State*, 177 Ga. App. 614, 619 (5) (340 SE2d 256) (1986).

This Bankers' affidavit, then, did not constitute a waiver by Interstate of sufficiency of service on it.

(b) We address another question regarding service on Interstate. As a nonresident motor carrier engaged in interstate commerce, Interstate is required to register with the Public Service Commission and designate an agent with the Commission for service upon it of all processes "in any action or proceeding against such motor common [contract] carrier growing out of its carrier operations." OCGA §§ 46-7-17 (a) and 46-7-62 (a). Failure to so designate allows service on the Secretary of State. Id. Although plaintiffs contend that a check was made with the Commission, apparently by telephone, and no agent was located for lessee Interstate (or owner Smith or driver Gambel), the record sports an uncontradicted affidavit from the Commission's executive secretary reflecting that an agent for service on Interstate has been in place in Georgia since 1970. Had the records been adequately checked by plaintiffs, the listing of Interstate's agent would have been found.

The complaint was filed just a few days before the statute of limitations expired. On the next day, service was made on the Secretary of State pursuant to OCGA §§ 46-7-17 (a) and 46-7-62 (a), and default was opened five months later. Fourteen months after that, service was made by the sheriff's deputy on the agent for Interstate who was registered with the Commission. This agent then wrote to plaintiffs' counsel and acknowledged that he served as agent for lessee Interstate.

The proof of service shows service in the appropriate manner on Interstate, i.e., through the motor carrier's registered agent on file with the Public Service Commission. In response to this second service, Interstate filed an answer asserting as defenses the statute of limitations and laches in the serving of process. Under OCGA § 9-11-4 (c), where the limitation accrues between the date of filing and the date of service and is more than five days after the filing, whether or not the service relates back is a question for the trial court, which considers the length of the elapsed time and the diligence of the plaintiff. *Bible v. Hughes*, 146 Ga. App. 769, 770 (2) (247 SE2d 584) (1978); *Brumit v. Mull*, 165 Ga. App. 663, 665 (3) (302 SE2d 408) (1983). Because the court did not consider this issue, the case is remanded for its resolution as to Interstate.

3. Enumerations two and three involve the trial court's dismissal as to the tractor driver Gambel and owner/lessor Smith. The ground was that, although each was a motor contract/common carrier required to register with the Commission and to be served under OCGA §§ 46-7-17 and 46-7-62, separate registration was unnecessary and both were included in that of lessee Interstate, with the result that failure to serve them through this statutory mechanism aborted the suit as against them.

Copies of the complaint and summons were mailed by the Secre-

tary of State's office to each of them pursuant to OCGA §§ 46-7-62 (a) and 46-7-17 (a) because neither had an agent designated with the Commission. A Commission affidavit states that Interstate is a registered nonresident motor carrier and has designated and maintained an agent for service of process in any action arising out of its carrier operations. A second such affidavit states that there has never been a registered agent for either Smith or Gambel, and that neither is or has ever been registered as a "motor carrier" in Georgia. Later, in 1985, service was attempted on Smith and Gambel by sheriff's service on the agent registered for Interstate. When that agent acknowledged to plaintiffs' counsel that he was agent for Interstate, he specifically stated "I am not the process agent for [owner/lessor] Gailon Smith, [driver] Gordon L. Gambel . . ."

Defendants' argument hinges on the definitions of "motor common carrier" and "motor contract carrier" in OCGA § 46-1-1 (7) and (8) at the time the court made its decision. Since then, effective April 9, 1986, OCGA § 46-1-1 has been rewritten and controls our decision. *In re L. L. B.*, 256 Ga. 768 (353 SE2d 507) (1987). It now reads: "(1) 'Carrier' means a person who undertakes the transporting of goods or passengers for compensation. (6) 'For hire' means an activity wherein for compensation a motor vehicle and driver are furnished to a person by another person, acting directly or knowingly and willfully acting with another to provide the combined service of the vehicle and driver, and includes every person acting in concert with, under the control of, or under common control with a motor carrier who shall offer to furnish transportation for compensation. (7) 'Motor contract carrier and motor common carrier' means as follows: (A) 'Motor contract carrier' means every person, except common carriers, owning, controlling, operating, or managing any motor propelled vehicle including the lessees or trustees of such persons or receivers appointed by any court used in the business of transporting persons or property for hire over any public highway in this state and not operated exclusively within the corporate limits of any city. (B) 'Motor common carrier' means every person owning, controlling, operating, or managing any motor propelled vehicle, and the lessees, receivers, or trustees of such person, used in the business of transporting for hire of persons or property, or both, otherwise than over permanent rail tracks, on the public highways of Georgia as a common carrier."

The service of process provision reads: "Each nonresident motor [common] carrier shall, before any certificate or other authority is issued to it under this article or at the time of registering as required by Code § 46-7-61 [46-7-16] designate and maintain in this state an agent or agents upon whom may be served all summonses or other lawful processes in any action or proceeding against such motor [common] carrier growing out of its carrier operations. . ." OCGA §§ 46-7-

62 (a) and 46-7-17 (a). Failure to so maintain an agent allows service through the Secretary of State.

The definition section, taken out of context, can be read to mean that all persons, including the lessor of a leased tractor and the driver of any given load, whatever his relation to the "carrier," must each register and maintain an agent. But it must be considered in context and as part and parcel of the statutory scheme of which it is a part, keeping in mind the cardinal rule of statutory construction, which is to ascertain the true intention of the General Assembly in the passage of the law. See *George C. Carroll &c. Co. v. Langford Constr. Co.*, 182 Ga. App. 258, 260 (355 SE2d 756) (1987); *Record Truck Line v. Harrison*, 220 Ga. 289, 290 (138 SE2d 578) (1964).

The history of the regulation of "carriers for hire" over public roads and highways in Georgia, shows that the activity sought to be regulated by the legislature is *engaging in the business* of carrying goods or persons "for hire," whatever the makeup of the entity engaged in the activity, and that only activities involved in carriage for hire will submit the carrier to substituted service under these statutes. An early discussion of the issue appears in *Self v. Dunn & Brown*, 42 Ga. 529 (1871), which involved the standard of care on a ferry operation. The defendants ran a mill and, in an effort to attract customers who otherwise would have no access to the mill, operated a ferry across the river. The service was free, although defendants acknowledged an increase in their mill business because of the ferry. The Court held that the greater standard of care imposed upon a "common carrier" did not apply to this ferry operation, stating that "[t]o make one a common carrier, he must be entitled, either by the bargain or by implication, to toll or hire." *Self*, supra at 530.

No matter how the participants in a transaction may label themselves, it becomes a matter for the factfinder to determine their role and which, if any, of the actors is a "carrier for hire." *Nobles v. H. W. Durham & Co.*, 226 Ga. 134 (173 SE2d 200) (1970) involved a pulpwood operation. Durham had a contract with Rayonier as one of its dealers from whom it would purchase pulpwood from a designated area. The actual transfer of title to the pulpwood could occur at different points in the transaction, depending on the arrangements made by Durham concerning the cutting and delivery of the wood to Rayonier. Branch, the driver of the truck involved in the accident at issue, had been cutting and hauling wood for Durham for years under an oral agreement at will.

Summary judgment was granted by the trial court to Durham, which was held not to be a motor carrier, thus precluding application of the venue provisions of the motor carrier act. The excellent analysis in the special concurrence to the opinion reversing this points out that Durham had made a contract for hire, because his agreement

with Rayonier was such that the total price paid for the wood "included the cost of transportation. This is clearly an agreement to transport another's property for hire as a contract carrier under the plain terms of Georgia law." *Nobles*, supra at 138. The concurrence also points out that if Durham was the "carrier for hire," driver Branch was its agent and the fact that Branch had no certificate was of no consequence.

Thus, in determining whether an entity is a "motor contract or common carrier" such that the substituted service provisions of OCGA §§ 46-7-17 (a) and 46-7-62 (a) apply, the inquiry must focus on the payment of money for the transportation of the goods or people. *Southeast Shippers Assn. v. Ga. Public Svc. Comm.*, 211 Ga. 550 (1) (87 SE2d 75) (1955); see *Radcliffe v. Boyd Motor Lines*, 129 Ga. App. 725, 730 (4) (201 SE2d 4) (1973); *Taylor v. Jones*, 123 Ga. App. 476, 477 (1) (181 SE2d 506) (1971).

The record does not answer this question in regard to driver Gambel's driving a tractor owned and leased by Smith under some arrangement with Interstate. These are matters of fact not yet decided, which are also remanded for determination. Thus, the validity of service on these two defendants remains open.

4. In enumeration one, the Ellerbees contend that the opening of default as to all defendants was error. The complaint was filed on January 27, 1983. Service was requested on the Secretary of State, for Interstate, Smith and Gambel (discussed in Division 2 as to Interstate and in Division 3 as to the other two), although Interstate was registered with the Commission. Service was perfected as to insurer Bankers on February 7, and a copy was admittedly received in their claims office on February 9. The complaint was received by mail from the Secretary of State by Interstate on approximately January 31, although, as discussed in Division 2, this was not legal service. Service on the agent identified in the Commission filing for Interstate was made on August 16, 1985, after the opening of the default. The question of the validity of the 1985 service remains for the trial court. Copies were received by Smith and Gambel by registered mail on February 14, 1983 and January 31, 1983, respectively. They were immediately forwarded to the lessee's insurer. The validity of this service cannot be disposed of here. See Division 3.

The motion to open default (styled as a Motion to Open Default Judgment, although no judgment had been entered) was filed May 2, 1983 and the motion granted in June based on the "affidavits of Larry D. Freeman and Myrtle C. Ellerbee, as well as the entire file of record. . . ."

Freeman, a Bankers claims supervisor, acknowledged that a copy of the summons and complaint was received in his office February 9. He stated that ". . . I have been unable to determine what exactly

happened to the Summons and Complaint after they were delivered to this office, but they obviously got misplaced or misfiled." He also stated that at about that time, the then claims supervisor was in the process of terminating his job "resulting in reorganization efforts in our claims department and some redistribution of claims files." Acknowledging that each of the three other defendants was entitled to a defense by Bankers under the terms of the policy, he stated in the affidavit that Bankers "acknowledged receipt of this notice [i.e., complaint and summons]; thereby causing each insured to rely upon us for a defense . . . It is my feeling that the [four] Defendants have valid defenses to the Plaintiffs' Complaint; namely, lack of negligence, comparative negligence, and last clear chance."

In opposition, Mrs. Ellerbee averred in detail her recollection of the accident, that the tractor-trailer pulled from a cross street directly into the path of her car, that it happened so suddenly she could not avoid it, and that she was not negligent and did not cause or contribute to causing the collision. She further stated that Bankers had fully compensated her for loss of her automobile.

The accident report reflects that driver Gambel was ticketed for failure to yield the right-of-way. Although parts of his statement to the officer contained in the report are illegible, it states that he acknowledged "misjudging clearance and thought [the Ellerbee vehicle] was farther away . . ."

Pursuant to OCGA § 9-11-55 (b), a prejudgment default may "be opened on one of three grounds if four conditions are met. The three grounds are: (1) providential cause, (2) excusable neglect, and (3) proper case; the four conditions are: (1) showing made under oath, (2) offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense. [Cit.]" *Muscogee Realty Dev. Corp. v. Jefferson Co.*, 252 Ga. 400, 401 (314 SE2d 199) (1984).

Opening a default is a matter resting within the sound discretion of the trial court which will not be disturbed absent an abuse of discretion. *U. S. Elevator Corp. v. Smyrna Hosp.*, 182 Ga. App. 886, 3, 4 (357 SE2d 322) (1987). However, compliance with the four conditions is a condition precedent to the exercise of this discretion. *Oculus Corp. v. Fred Chenoweth Equip. Co.*, 172 Ga. App. 547, 548 (2) (323 SE2d 836) (1984); *Global Assoc. v. Pan American Communications*, 163 Ga. App. 274, 275 (1) (b) (293 SE2d 481) (1982).

The trial court had before it an affidavit from the insurer's claims supervisor which contained factual information concerning his explanation of the claimed "excusable neglect" upon which the defendants relied in attempting to open the default. As quoted above, the affidavit states absolutely no factual information concerning the "meritorious defense" which must be shown before excusable neglect is even an

issue. While there is no requirement that the affidavit contain "great detail" concerning the defense, see *Cohutta Mills v. Hawthorne Indus.*, 179 Ga. App. 815, 816 (1) (a) (348 SE2d 91) (1986), some factual information must be provided. See *Muscogee Realty Corp.*, supra at 402; *P. H. L. Dev. Corp. v. Smith*, 174 Ga. App. 328, 329 (1) (329 SE2d 545) (1985); *Cohutta Mills*, supra at 816 (1) (a); *American Liberty Ins. Co. v. Sanders*, 120 Ga. App. 202, 206 (2) (a) (170 SE2d 249) (1969); rev'd on the ground that there was no reasonable excuse for the failure to file the answer, 225 Ga. 202.

The use merely of the names of given defenses, such as "lack of negligence, comparative negligence, and last clear chance," more so when voiced by a layman, have no weight in these circumstances. In the accident report, driver Gambel acknowledged his own negligence and, as far as is decipherable, did not attribute any to Mrs. Ellerbee. Thus, lack of negligence is not available. The last clear chance doctrine also requires among other things that there be negligence on the part of the plaintiff before it comes into play. *Harrison v. Feather*, 178 Ga. App. 35, 36 (342 SE2d 1) (1986); *Atlantic Coast Line R. Co. v. Coxwell*, 93 Ga. App. 159, 164 (2) (91 SE2d 135) (1955). The comparative negligence statute, OCGA § 51-11-7, does not, under the facts before us, bar a plaintiff's recovery, but merely serves to diminish the recovery if applicable. *Smith v. American Oil Co.*, 77 Ga. App. 463, 488 et seq. (49 SE2d 90) (1948); see *Wendlandt v. Shepard Constr. Co.*, 178 Ga. App. 153, 154 (1) (342 SE2d 352) (1986).

The court erred in allowing the opening of the default, no meritorious defense as to any defendant having been set up.

*Judgment reversed with direction. McMurray, P. J., and Sognier, J., concur.*

DECIDED JULY 14, 1987 —
REHEARING DENIED JULY 28, 1987.

*Joe L. Anderson*, for appellants.
*Edward W. Killorin, Robert W. Killorin*, for appellees.
*Michael J. Bowers, Attorney General, H. Perry Michael, First Assistant Attorney General, Patrick W. McKee, Senior Assistant Attorney General, H. Jeff Lanier, Assistant Attorney General*, amici curiae.