A93A0006. WRIGHT v. TRANSUS, INC. et al.
(434 SE2d 786)

BIRDSONG, Presiding Judge.

This is an appeal from the grant of summary judgments in this personal injury suit in favor of Transus, Inc., American International Insurance Company (American Insurance), and Protective Insurance Company (Protective Insurance).

Plaintiff Vernon Wright alleged his vehicle was struck in the parking lot of a Hardee's restaurant by a tractor-trailer rig operated by Cardwell, acting in the employment of Transus, Inc. and rendering Transus liable as respondeat superior. The insurers were sued under OCGA § 46-7-12 (e) of the Public Utilities & Transportation Act, as to joinder of insurers of a motor common carrier. The summary judgments included a finding that American Insurance and Protective Insurance were not proper parties and suit against them was dismissed. *Held*:

1. Transus convinced the trial court that Cardwell was not a Transus employee but operated his tractor-trailer rig as an independent contractor under a lease with Transus, and he was not under the control or direction of Transus or performing any service for Transus at the time of the accident, at about 4:00 p.m. on July 20, 1987. On the day of the collision at 4:30 a.m., Cardwell signed in on the "In and Out Terminal Register" at the Transus terminal in Albany and dropped a loaded trailer at the terminal. Cardwell then went to the sleeping quarters provided by Transus for drivers. He slept about eight hours. Cardwell was considered by Transus to be off-duty until he was dispatched again with a trailer load. On this day, Cardwell was not dispatched again by Transus until 8:45 p.m. After waking at the Transus sleeping quarters, Cardwell took the tractor for servicing at Carlton Caterpillar. Then he drove the rig to Hardee's to get a sandwich, in anticipation of going back to the Transus terminal to wait for another dispatched load.

Cardwell was not compensated for mileage incurred by his trailer unless he was under dispatch for Transus at the time, and Cardwell, not Transus, was billed for the servicing to the rig by Carlton Caterpillar. Transus contends that the lease agreement establishes a relationship of carrier/independent contractor and not employer/employee; that neither was agent of the other; that Transus had no authority to control operation and maintenance of the rig except as required by law to accomplish the purposes of the lease agreement;

that Cardwell furnished all labor and supplies to operate the rig, and performed all services necessary in the transportation of such commodities as Transus may direct. Transus contends the lease required Cardwell to keep the rig in safe condition and to bear the expense of all fuel, parts, service, fees and taxes, and to maintain "bobtail" liability insurance. He purchased his own diesel fuel, truck license and the PSC plate which authorizes Transus to operate in Georgia. Cardwell did not drive for anyone other than Transus, but Transus alleges that Cardwell stated he would have driven for someone else if he had the time.

Appellees contend no issue of material fact remains that Cardwell was an independent contractor and sole owner/operator of the tractor-rig, and that he was on a purely personal mission and had not been dispatched or given an assignment by Transus at the time of this collision and therefore was not engaged in the furtherance of the business of Transus.

The material issues in this case are similar in principle to those of *Nationwide Mut. Ins. Co. v. Holbrooks*, 187 Ga. App. 706 (371 SE2d 252). As in *Nationwide*, the motor common carrier was leased to the common carrier, and was operated by the owner/lessor. The surface issue in *Nationwide* of insurance coverage was decided on the underlying principle that under ICC requirements for operation and continued certification of the carrier's business, the carrier's lease was required to have " 'exclusive possession, control and use of the equipment for the duration of the lease' and to 'assume complete responsibility for the operation of the equipment for the duration of the lease.' " Id. at 710. Even though the driver (an employee of the owner/lessor) had finished his assignment for the day and had driven the carrier home, he did so with the carrier/lessee's knowledge and permission as part of his work routine. As said in *Nationwide*, in view of ICC regulations Transus can hardly contend that it was none of its business where Cardwell took the truck or what he did with it when he was not using it strictly in the performance of Transus' business, as Transus was by law required to exercise control.

The facts in this case are even more persuasive of this inference than those in *Nationwide*. Under ICC regulations this motor carrier was under the control of Transus. Transus' business required it to maintain a terminal in Albany and sleeping quarters for the drivers of the vehicles engaged in the operation of its business. Cardwell was in Albany to deliver a load at the Transus terminal and to pick up another when he was dispatched; to facilitate the regular operation of this pattern, Cardwell drove the carrier to the sleeping quarters provided by Transus. He was, in effect, on call for the next dispatch; certainly this, at least, is a material issue of fact.

If Cardwell was to eat a meal in Albany, he had either to walk,

hire a taxi, rent a car, or drive the tractor-rig to the restaurant. The evidence shows beyond any material issue of fact that it was intended that the driver (who in this case was also the owner/lessor of the vehicle) would use the vehicle in the time between delivering a load to the Transus terminal and setting out on another dispatch, and would do so in anticipation of being called at any time for another dispatch. He remained in Albany because he was awaiting his next dispatch, and in fact he was dispatched again later that day after this collision. It cannot be said that Cardwell's interlude at the restaurant was "purely personal" as a matter of law, as it was part of Transus' operational routine while he was in Albany awaiting Transus' next dispatch. Unless he intended to abandon his duties of employment, he could not leave Albany and was required to conduct his personal business, including driving to a restaurant to eat, by using the vehicle. At least, there are issues of fact as to these matters.

We are not advised of any restriction placed by Transus on a driver's use of its leased common carrier to go to a restaurant while awaiting his next dispatch, or that he violated any rule by doing so. Contrary to the inferences Transus would have us draw, the reasonable inference is that everything Cardwell did while in Albany was in pursuit of Transus' business, as he was there solely to await the next dispatch, whenever that might occur at Transus' discretion. When Cardwell went to sleep, he slept at Transus' premises; when he awoke, he took the vehicle to be serviced, in pursuit of the operation of Transus' business, and although Cardwell was in the restaurant parking lot to eat lunch, he was awaiting his next dispatch, and he was therefore " 'at that time engaged in serving his master.' " *West Point Pepperell v. Knowles*, 132 Ga. App. 253, 256 (208 SE2d 17).

Certainly the lease of a vehicle by the carrier, as opposed to its ownership, does not control the question whether the driver was engaged in the carrier's business, under the evidence in this case.

Viewing all the evidence most indulgently in favor of the respondent on appellees' motions for summary judgment, construing the evidence most strongly against them as movants, and giving the party opposing the motion the benefit of all inferences fairly and reasonably drawn in support of his case (see generally *Brandywine Townhouses v. Morrison*, 200 Ga. App. 425 (408 SE2d 422)), we find the trial court erred in granting summary judgment to appellees on the issue of respondeat superior liability. This is an issue for the jury.

2. It follows that the trial court erred in granting judgment to the insurers of motor common carriers, dismissing them from the suit; plaintiff was entitled to bring a direct action against them under OCGA § 46-7-12 (e). Any issue as to constitutionality of the statute is in the exclusive jurisdiction of the Supreme Court on appeal (*Kolker v. State*, 193 Ga. App. 306 (387 SE2d 597)), and in any case, is not

properly raised on appeal where the trial court did not expressly consider and rule upon it.

*Judgment reversed. Pope, C. J., McMurray, P. J., Cooper and Blackburn, JJ., concur. Beasley, P. J., Andrews and Smith, JJ., concur in part and dissent in part. Johnson, J., not participating.*

ANDREWS, Judge, concurring in part and dissenting in part.

Because I believe that plaintiff Wright failed to show a material issue of fact with regard to whether Cardwell was on company business or a personal mission at the time of the accident, I respectfully dissent. Also, I do not agree with the rationale put forward by the majority regarding analysis of the relationship between an owner/lessor and a trucking company/lessee engaged in intrastate or interstate commerce.

1. The issue of responsibility for the actions of a driver who is not the owner of the vehicle but is using it in the course of his employment when an accident occurs can be seen as a continuum. At its basic level, there is the common law master-servant analysis under the doctrine of "respondeat superior," in which the inquiry is whether the servant (employee) was at the time of the injury acting within the scope of his employment and on the business of the master (employer). *Braddy v. Collins Plumbing &c.*, 204 Ga. App. 862, 864 (420 SE2d 806) (1992); *Viau v. Fred Dean, Inc.*, 203 Ga. App. 801, 802 (2) (418 SE2d 604) (1992).

When the issue of intrastate or interstate commerce and federal and state regulation thereof are added to the mix, the inquiry becomes somewhat more complicated. This is in part attributable to the common business practice of trucking companies which lease tractors from owner/drivers who then drive for the company, as here with Transus and Cardwell, or hire other drivers to drive for them. See *Ellerbee v. Interstate Contract Carrier Corp.*, 183 Ga. App. 828 (360 SE2d 280) (1987).

Under OCGA Title 46, Chapter 7, motor contract carriers and motor common carriers are required to either post a bond or provide a policy of insurance " 'for the protection of the public against injuries proximately caused by the negligence of such motor carrier, its servants, or its agents.' OCGA §§ 46-7-12 (a) (c); 46-7-58 (a) (c)." *Ellerbee*, supra at 828 (1).

Likewise, the Interstate Commerce Commission regulations provide that the carrier's lease must require it to have " 'exclusive possession, control and use of the equipment for the duration of the lease,' and to 'assume complete responsibility for the operation of the equipment for the duration of the lease.' " *Nationwide Mut. Ins. Co. v. Holbrooks*, 187 Ga. App. 706, 710 (1) (371 SE2d 252) (1988).

As stated in *Simmons v. King*, 478 F2d 857 (5th Cir. 1973), and

adopted by this court in *Nationwide*, supra, " 'the ICC carrier's liability for equipment and drivers covered by leasing arrangements is not governed by the traditional common law doctrine of master-servant relationships and respondeat superior.' [*Simmons*] at 867. The *Simmons* court [held] that under the statutorily mandated terms of the lease, the carrier lessee had 'assumed exclusive possession, control, and use of the vehicle and responsibility to the public, (the driver) became his statutory employee, and as such (the carrier) was vicariously liable *as a matter of law* for the negligence of (the driver).' " *Nationwide*, supra at 712 (3). This theory obviates the need for the injured person to factually prove that, despite the use of "lessor-lessee" language which generally gives rise to independent contractor status, the legal relationship of the owner/driver and the trucking company for purposes of compensating the injured person is that of employer-employee.

The injured person must, however, even in this context, show that the accident happened while the driver was "on business of the master [trucking company]." *Curtis, Inc. v. Kelley*, 167 Ga. App. 118, 119 (305 SE2d 828) (1983).[1]

2. In the present case, Transus, defendant below, moved for summary judgment on this issue, putting forth the affidavit of Cardwell, the owner/driver, that he was on a personal mission of his own, unconnected with Transus, when the accident occurred. He swore that he had checked his load in at the Transus terminal, dropped the trailer with the load there, gone to have his tractor serviced, and then to have lunch, which is when the accident occurred. He was solely responsible for the maintenance of the tractor and was also required to maintain insurance (here provided by American International) for periods when he was "bobtailing."[2] Also submitted was the affidavit of the Transus dispatcher that Cardwell had checked out at Transus and was not under the company's control until later dispatched with another load, hours after the accident.

"In order '(t)o prevail on a motion for summary judgment (OCGA § 9-11-56), a defendant-movant is required to pierce the allegations of the complaint and to establish as a matter of law that the plaintiff could not recover under any theory fairly drawn from the pleadings and the evidence. (Cits.)' *Holiday Inns v. Newton*, 157 Ga. App. 436 (278 SE2d 85) (1981); [cit.]." *Willis v. Allen*, 188 Ga. App. 390, 391 (373 SE2d 79) (1988).

"Once the moving party for summary judgment has carried its

---

[1] Prior to federal and state regulation of interstate and intrastate commerce, the common law rules of bailment controlled these issues. OCGA § 44-12-60 et seq.; see *Reliance Ins. Co. v. Bridges*, 168 Ga. App. 874, 878 (1) (311 SE2d 193) (1983).

[2] Driving the tractor without a trailer attached to it.

burden of making out a prima facie case, the burden shifts and the opposite party must come forward with rebuttal evidence or suffer judgment against him. *Meade v. Heimanson*, 239 Ga. 177, 180 (236 SE2d 357) (1977); [cit.]." *Bright v. Knecht*, 182 Ga. App. 820, 821 (357 SE2d 159) (1987).

Here, Wright submitted no affidavits or depositions to support his contention that Wright was in the service of Transus at the time of the accident.[3]

Therefore, I must conclude that the grant of summary judgment to Transus and its insurer, Protective Insurance Company, was proper. *Coffee Chrysler-&c. v. Nasworthy*, 198 Ga. App. 757, 758 (403 SE2d 453) (1991); *Wittig v. Spa Lady*, 182 Ga. App. 689, 690 (356 SE2d 665) (1987); see *Mountain v. Southern Bell Tel. &c. Co.*, 205 Ga. App. 119, 120 (1) (421 SE2d 284) (1992). Compare *U. S. Fidelity &c. v. Skinner*, 188 Ga. 823 (5 SE2d 9) (1939) with *Edwards v. State of Ga.*, 173 Ga. App. 87 (325 SE2d 437) (1984).

3. The issue of Cardwell and his "bobtail" insurer, American International, however, is still before the court below since the conclusion that he was not on company business at the time of the wreck leaves the issue of his personal liability for determination.

I am authorized to state that Presiding Judge Beasley and Judge Smith join in this opinion.

### ON MOTION FOR RECONSIDERATION.

Appellees now contend that a footnote in the dissent has alerted them to the alleged fact that the complete record considered by the trial court was not sent up. Appellees have waived any such complaint under Court of Appeals Rule 47. Appellees contend that we should make an exception to this rule because "through the exercise of self help, the appellees have tried to stay abreast of this matter and have tried to comply with this Court's rules, unlike the appellant who appears to have ignored them." This assertion begs the rule and creates no exception to it.

Further, the great quantity and variety of factual matters which appellees argue entitled them to judgment as a matter of law merely prove that issues of fact remain for the jury, construing the evidence in favor of appellants as respondents to the motion for summary judgment. That the case cannot be decided as a matter of law is evi-

---

[3] While the record here contains an order incorporating the record of another suit between these parties which had been dismissed and later the present suit filed, none of that earlier record was presented here by appellant Wright and he has not fulfilled his burden to show conflicts in the record presented to this court. *Wiggley v. State*, 204 Ga. App. 583, 584 (2) (420 SE2d 82) (1992), citing *Williams v. Lemon*, 194 Ga. App. 249, 252 (3) (390 SE2d 89) (1990).

denced by the differences of opinion of the members of this court.
*Motion for reconsideration denied.*

DECIDED JULY 16, 1993 —
RECONSIDERATION DENIED JULY 30, 1993 — 

*Floyd Mincey, Stephanie D. Blair*, for appellant.
Vernon Wright, *pro se.*
*Watson, Spence, Lowe & Chambless, Thomas S. Chambless*, for
appellees.