A01A1314. AXA GLOBAL RISKS v. EMPIRE FIRE & MARINE INSURANCE COMPANY.
(554 SE2d 755)

ELLINGTON, Judge.

AXA Global Risks appeals the judgment in favor of Empire Fire & Marine Insurance Company in this insurance coverage declaratory judgment action, contending it provided only excess coverage for the loss. For the reasons which follow, we reverse.

The trial court denied the parties' cross motions for summary judgment on the basis that material questions of fact remained as to two issues. Using a verdict form with two special interrogatories, the trial court submitted these questions to a jury, then applied its legal analysis to the undisputed and stipulated facts and entered judgment in favor of Empire. When a trial court's decision is based upon the application of the law to stipulated or undisputed facts, we apply a de novo standard of review. *Dept. of Revenue v. Sledge,* 241 Ga. App. 833 (528 SE2d 260) (2000).

The record shows the following undisputed facts: Clifford Conner owned a 1991 Freightliner tractor and "permanently" leased it to JM Enterprises, Inc. ("JME"), a trucking company. JME employed James Banzhoff as a driver. On May 23, 1998, Banzhoff was "bobtailing" the tractor, that is, driving it with no trailer attached, when he was

---

[14] See *Home Indem. Co. v. Battey Machinery Co.,* 109 Ga. App. 322, 326-327 (136 SE2d 193) (1964).

involved in a collision with an automobile. The driver and her unborn child were killed, and another child was injured. The day before the accident, a Friday, Banzhoff completed a run to Florida by returning to JME's yard in Winder and dropping the empty trailer. A dispatcher told Banzhoff that his next assignment was to pick up a load at the Winder yard and deliver it by the following Tuesday. After spending Friday night in his tractor in the Winder yard, Banzhoff was driving to his residence where he planned to spend Saturday and Sunday nights. At the time of the accident, Banzhoff was off duty for the long weekend. Banzhoff did not own or lease any personal vehicle; his only means of transportation when off duty was the tractor JME leased from Conner.

At the time of the accident, JME had motor carrier liability coverage, or "truckers coverage," from AXA. JME's AXA policy provided broad liability coverage for anyone using with JME's permission any vehicle JME owned, hired, or borrowed. As to primary and excess coverage, JME's AXA policy provided:

> a. This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. . . .
> b. Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto."
> c. Except as provided in paragraphs a. and b. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

At the time of the accident, Conner had a commercial auto policy from Empire. Conner's Empire policy provided liability coverage for "non-trucking use" of the tractor and excluded coverage for business use, as follows: "[b]odily injury or property damage while a covered auto is used to carry property in any business or while a covered auto is used in the business of anyone to whom the auto is leased or rented." (Punctuation omitted.) The Empire policy provided primary insurance for any covered vehicle Conner owned.

AXA and Empire jointly mediated the wrongful death actions resulting from the accident and settled them for $1.5 million. They each agreed to pay $750,000 and to litigate their coverage dispute in Empire's pending declaratory judgment action. They stipulated that the prevailing party would be reimbursed $250,000 by the other party. In denying the parties' cross motions for summary judgment, the trial court concluded questions of fact remained regarding whether, at the time of the accident, Banzhoff had JME's permission

to drive the tractor and whether he was acting in the scope of his employment.

In response to the special interrogatories, the jury determined that Banzhoff had "actual or implied permission from [JME] to use this truck in the manner and for the purpose that he was using it at that time" and that Banzhoff "was not acting in the scope of his employment" with JME. Based on the jury's findings and the undisputed facts, the trial court concluded that JME's trucking policy with AXA covered the loss because JME leased the vehicle involved and Banzhoff was using it with JME's permission. The trial court concluded that "what Banzhoff was doing at the time of the accident," that is, whether he was acting within the scope of his employment, was irrelevant under *Nationwide Mut. Ins. Co. v. Holbrooks*, 187 Ga. App. 706 (371 SE2d 252) (1988). The trial court interpreted *Holbrooks* as

> extend[ing] the scope of a carrier's liability beyond that of respondeat superior by declaring that where the employer has knowledge of and places no restrictions on an expressed intent to use a truck in a certain manner, whether or not the use is within the scope of employment, the employer becomes responsible to the public for its statutory employee's use of the truck under 49 C.F.R. § 376.12 (c).[1]

Based on the jury's finding that Banzhoff was not acting in the scope of his employment with JME at the time of the accident, AXA contends that the loss did not fall within the business use exclusion of Conner's "non-trucking use" policy with Empire. Therefore, AXA contends, the Empire policy provided primary coverage, and the AXA coverage was excess.

We agree with the trial court that under federal motor carrier regulations JME, as an interstate motor carrier, has exclusive control of the tractor for the duration of the lease and is legally responsible to the public for its driver's use of the truck, regardless of whether the use is within the scope of employment. 49 CFR § 376.12 (c); *Holbrooks*, 187 Ga. App. at 709-710 (1). In *Holbrooks*, however, the issue of insurance coverage provided by the tractor's owner was not properly before this Court. 187 Ga. App. at 706. We find no basis

---

[1] Under federal motor carrier regulations, a motor carrier may perform authorized transportation using equipment it does not own only under certain conditions, including that there is a written lease providing "that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease." 49 CFR § 376.12 (c) (1). See 49 CFR § 376.11.

to conclude that the interstate motor carrier regulations require that a lessee's insurance policy provide *primary* coverage where other coverage is available.

In deciding the issue of which coverage is primary, we must try to ascertain the intention of the parties by looking to the insurance contracts together. "In determining the intention of the parties, we must first take into consideration the ordinary and legal meaning of the words employed in the insurance contract[s]. If the terms of the contract[s] are plain and unambiguous, the contract[s] must be enforced as written, so long as [they are] within the prescribed bounds of the law." (Citations omitted.) *Ryan v. State Farm &c. Ins. Co.*, 261 Ga. 869, 872 (413 SE2d 705) (1992). "No construction is required or even permissible when the language employed by the parties in the contract[s] is plain, unambiguous and capable of only one reasonable interpretation." (Citation, punctuation and footnote omitted.) *Tucker Materials v. Devito Contracting & Supply*, 245 Ga. App. 309, 310 (535 SE2d 858) (2000).

In this case, the relevant provisions of the two policies are unambiguous and consistent. Conner's commercial auto policy from Empire provided primary coverage for Conner's tractor but excluded coverage while the tractor was "used in the business of" JME. JME's trucker's policy from AXA provided primary coverage for the leased tractor while "used exclusively in [JME's] business as a 'trucker' "; otherwise, it provided excess coverage for the leased tractor. Applying the plain meaning of the terms, the two policies dovetail: AXA provides primary coverage for the loss if Banzhoff was using the tractor in JME's business as a "trucker," while Empire provides primary coverage if Banzhoff was *not* using the tractor in furtherance of JME's business.

In assigning primary responsibility to AXA, the trial court in effect equated driving with JME's permission to use the tractor "in the manner and for the purpose that he was using it at the time" with driving in furtherance of JME's business. We find no support for the trial court's conclusion that *any* use with permission of the lessee is by definition use in the lessee's business. A driver bobtailing a tractor may be using the tractor in the lessee's business, as when he is taking the tractor to, or returning from, a repair shop. *Wright v. Transus, Inc.*, 209 Ga. App. 771, 772-773 (1) (434 SE2d 786) (1993). See also *Planet Ins. Co. v. Anglo American Ins. Co.*, 312 N.J. Super. 233, 239-241 (711 A2d 899, 903) (1998). Further, even when a driver bobtailing a tractor is immediately engaged in a personal errand, such as driving to a restaurant to eat, he may be using the tractor in the lessee's business, as when he has delivered a load to the terminal and is "on call" awaiting his next dispatch, which could come at any time. *Wright v. Transus, Inc.*, 209 Ga. App. at 772-773 (1). See also

*Guaranty Nat. Ins. Co. v. Vanliner Ins. Co.*, 1998 U. S. Dist. LEXIS 9505 (E.D. Pa.).

On the other hand, logic tells us that a driver may use a tractor, although with the lessee's permission, for wholly personal reasons, such as driving the tractor for personal transportation after completing one job and before beginning another. Such is the case here. As the jury found, Banzhoff was not acting in the scope of his employment with JME.[2] Banzhoff was not "under dispatch" as that phrase is used in the trucking industry. There were no restrictions on Banzhoff's activities over the weekend, and his trip home was not part of JME's regular work pattern or "operational routine." Cf. *Wright v. Transus, Inc.*, 209 Ga. App. at 772-773 (1). The "essential nature of the trip" was personal; Banzhoff was not engaged in any activity intended to further JME's commercial interests. Cf. *Planet Ins. Co. v. Anglo American Ins. Co.*, 312 N.J. Super. at 241-242. The original intent of the activity was clearly personal, and the portion of the trip when the accident occurred was completely unrelated to JME's business. Cf. *Wright v. Transus, Inc.*, 209 Ga. App. at 772-773 (1); *Planet Ins. Co. v. Anglo American Ins. Co.*, 312 N.J. Super. at 239-241.

Under these circumstances, Banzhoff's personal use of the tractor did not fit the plain terms of the business exclusion in the Empire nontrucking use policy. Therefore, the Empire policy provided primary coverage for the loss. Because JME did not own the tractor and the tractor was not being used exclusively in JME's business as a trucker, its trucker's policy with AXA provided only excess coverage for the loss. The trial court erred in granting Empire's motion for judgment on the verdict.

*Judgment reversed. Johnson, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 13, 2001 — 

*Claxton & Claxton, James F. Taylor III*, for appellant.
*Gray, Hedrick & Edenfield, William E. Gray II*, for appellee.

---

[2] We do not hold that driving in the scope of one's employment with the lessee is synonymous with driving in furtherance of the lessee's business within the terms of a business exclusion like the one in the Empire policy. But the fact that Banzhoff was not driving in the scope of his employment provides some guidance in evaluating whether he was driving in JME's business. See *Connecticut Indem. Co. v. Harris Transport Co.*, 909 FSupp. 1212, 1222 (7) (W.D. Ark. 1995); *Planet Ins. Co. v. Anglo American Ins. Co.*, 312 N.J. Super. at 239-241.