## A01A1331. HOT SHOT EXPRESS, INC. v. ASSICURAZIONI GENERALI, S.P.A. et al.

(556 SE2d 475)

PHIPPS, Judge.

Hot Shot Express, Inc. (Hot Shot) appeals the grant of summary judgment to Assicurazioni Generali, S.P.A. (Generali) and Aon Risk Service, Inc. of Georgia (Aon) in its action for reimbursement of money paid to settle a claim arising from a collision involving one of its leased tractor-trailers. Because we find that Generali, as the "non-trucking" insurance provider, was not responsible for the resulting loss, we affirm.

Hot Shot, an interstate trucking company based in Pennsylvania, leases trucks to deliver its freight. Richard Darr owned a tractor and trailer, which he leased to Hot Shot. During the lease period, Darr drove his tractor and trailer exclusively for delivering Hot Shot freight. The lease required that Hot Shot maintain "trucker's insurance," i.e., public liability, property damage, and cargo insurance on the leased truck to cover any claims that might be made while the truck was operating on Hot Shot's business. This insurance policy was issued by Protective Insurance Company (Protective).[1] The policy named Hot Shot as the insured, and Hot Shot maintained a $1 million self-insured retention, i.e., deductible, for personal injury liability. The lease also required Darr to carry insurance for "non-trucking" liability to cover claims arising when the tractor-trailer was not being used on Hot Shot's business.[2] Although Hot Shot purchased this coverage, Darr was the named insured on the policy, and the monthly premiums were deducted from his Hot Shot earnings. This "non-trucking" insurance coverage was provided by Generali through Aon, as insurance broker for the policy.

The Generali policy provides: "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' "[3] The policy includes the following exclusion: "1. This insurance does not apply to: a. A covered 'auto' while used to carry property in any business. b. A covered 'auto' while in the business of anyone to whom the 'auto' is rented. 2. Who is an insured does not include anyone engaged in the business of transporting property by 'auto' for hire who is liable for your conduct."

---

[1] Protective is not a party in the action because the claim amount was within the $1 million self-insured retention.

[2] This coverage is known as "bobtail" and "deadhead" coverage. "Bobtailing" refers to operating the truck without the trailer attached, and "deadheading" means driving with an empty trailer.

[3] "Auto" refers to the truck Hot Shot leased from Darr.

On March 16, 1992, Darr, who lives in Ohio, picked up Hot Shot freight in Jackson, Mississippi, and drove it to Hialeah, Florida. After unloading the freight, Darr was en route to a Hot Shot terminal in Ocala, Florida, when he collided with a minivan. Both vehicles were total losses, and injuries resulted. Darr reported the collision to Hot Shot. Although there were two sources of liability coverage on the truck — the "trucking" coverage provided by Protective and the "non-trucking" coverage provided by Generali — Hot Shot reported the collision only to Protective. Neither Generali nor Aon was initially contacted.

In August 1992, the occupants of the minivan made claims against Hot Shot for personal injuries and property damage. Two years later, in August 1994, Hot Shot notified Aon of the accident. Aon opined that the claim was not covered by the Generali policy. Although by December 1996, Hot Shot had settled the claims of the minivan occupants, the record does not reflect any additional contact between Hot Shot and Generali or Aon until Hot Shot brought the present action in December 1997 seeking indemnification from Generali.

The parties filed cross-motions for summary judgment. The trial court found, as a matter of law, that Hot Shot had neither a direct cause of action nor a valid subrogation claim against Generali and Aon. Thus, the court granted Generali and Aon's motion for summary judgment and denied Hot Shot's cross-motion.

On appeal, we review the trial court's grant of summary judgment de novo to determine whether the evidence of record, viewed in the light most favorable to the nonmoving party, demonstrates any genuine issue of material fact.[4] Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[5] We will affirm a grant of summary judgment if it is right for any reason.[6]

Federal motor carrier regulations require a motor carrier utilizing leased or rented equipment to "have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease."[7] Under this regulatory scheme, the motor carrier is fully responsible to the public for the operation of its leased

---

[4] *Leal v. Hobbs*, 245 Ga. App. 443 (538 SE2d 89) (2000).

[5] See id.

[6] *Costrini v. Hansen Architects*, 247 Ga. App. 136, 138 (1) (543 SE2d 760) (2000).

[7] 49 CFR § 376.12 (c).

vehicles,[8] regardless of whether the vehicles are used in the scope of the carrier's business.[9]

Hot Shot argues that Darr was not engaged in trucking business at the time of the collision because he had already unloaded his delivery in Hialeah, and therefore the exclusions in the Generali policy did not apply. Thus, Hot Shot contends, Generali's "non-trucking" insurance policy covered the claims resulting from the collision, despite Hot Shot's failure to notify Generali of the collision and subsequent tort claim. In the alternative, Hot Shot argues that Aon should reimburse it because Aon, whom Hot Shot eventually notified, breached its fiduciary duty to pass along the notice to Generali. Generali and Aon advance a number of reasons why they are not liable, including Hot Shot's failure to give timely and appropriate notice, Hot Shot's lack of standing to sue under the Generali policy, and the absence of a valid subrogation claim.

Pretermitting these issues, we conclude that Generali's policy did not apply to the collision in question. The Generali policy expressly excluded coverage when the truck was being used "in the business of anyone to whom the [truck] is rented."[10] Thus, if Darr was "in the business of" Hot Shot at the time of the collision, the policy did not apply. Because we have held that under the federal regulatory scheme Darr is Hot Shot's statutory employee,[11] we are guided by the analysis used to determine whether an employer is vicariously liable for the torts of its employee.[12] (Being mindful, however, that driving in the scope of one's employment with the lessee does not equate to driving in furtherance of the lessee's business within the terms of a business exclusion.)[13] Under a respondeat superior analysis, liability attaches if the employee was acting "within the scope of the actual transaction of the master's business for accomplishing the ends of his employment."[14]

At his deposition, Darr testified that he planned to go home to

---

[8] *Nationwide Mut. Ins. Co. v. Holbrooks*, 187 Ga. App. 706, 713 (3) (371 SE2d 252) (1988).

[9] Although Hot Shot correctly contends that it is statutorily responsible to the public for the operation of the leased truck driven by Darr, it was not required to settle the personal injury claims that arose from the collision. "[There is] no basis to conclude that the interstate motor carrier regulations require that [Hot Shot's] insurance policy provide *primary* coverage where other coverage is available." (Emphasis in original.) *AXA Global Risks v. Empire Fire &c. Ins. Co.*, 251 Ga. App. 543, 545-546 (554 SE2d 755) (2001).

[10] The policy also excluded coverage when the truck was being used to carry freight. However, as it is uncontested that the trailer was empty at the time of the accident, that exclusion does not apply.

[11] *Holbrooks*, supra at 713 (3).

[12] *AXA Global Risks*, supra at 547, n. 2.

[13] Id.

[14] (Punctuation omitted.) *Wittig v. Spa Lady*, 182 Ga. App. 689, 690 (356 SE2d 665) (1987).

Ohio after the Hialeah delivery. He said he called the Hot Shot agent before he arrived in Ocala to determine if there was a delivery he could make while traveling home. Although he was not positive, he believed he was not assigned a load at that point. Darr said that, in spite of this, it was his intention to go to the freight terminal in Ocala and wait for a load. He testified that whenever he made deliveries in Florida, it was customary for him to go to the Ocala terminal to wait on a load and that he had driven home only once with an empty trailer.

In *Wright v. Transus, Inc.*,[15] we found that a tractor may be in use for the carrier's business even though the driver has made a delivery and is awaiting his next dispatch, if the driver was in the city where the freight terminal is located "solely to await the next dispatch."[16] Under such circumstances, the driver is " ' "at that time engaged in serving his master." ' [Cit.]"[17]

In *AXA Global Risks*,[18] this Court found that the driver was not engaged in the carrier's business, but rather on a personal mission, when an accident occurred while the driver was off duty during a long weekend, even though he was assigned a load for pickup the following Tuesday. Accordingly, since the activity which resulted in the collision was not part of the driver's "regular work pattern" or "operational routine," we held that primary insurance coverage fell under the nontrucking provider.[19]

Here, even though Darr had unloaded in Hialeah and was not yet under dispatch, he was en route to Ocala for the purpose of picking up another load. The undisputed facts show that Darr was within his "work pattern" and "operational routine."[20] It cannot be said that the trip from Hialeah to the freight terminal in Ocala was not related to Hot Shot's business.[21] We find as a matter of law that the accident occurred while Darr was "in the business" of Hot Shot and that, Generali, as the "non-trucking" provider, was not responsible for the loss. Because we have so found, we need not discuss Hot Shot's remaining enumerations. We affirm the decision of the trial court.

*Judgment affirmed. Blackburn, C. J., and Smith, P. J., concur. Barnes, J., not participating.*

---

[15] 209 Ga. App. 771, 772-773 (1) (434 SE2d 786) (1993).
[16] Id. at 773.
[17] Id.
[18] Supra.
[19] Id. at 547.
[20] Id.
[21] See id.

376

*Gray, Hedrick & Edenfield, William E. Gray II, Linda M. Fitzgerald*, for appellant.

*Dennis, Corry & Porter, Ronald R. Coleman, Jr., Sutherland, Asbill & Brennan, Thomas W. Curvin, Elizabeth V. Tanis, Hill & Kertscher, Jennifer S. Friedman*, for appellees.