### A03A1189. CHARANIA v. REGIONS BANK.
(591 SE2d 412)

RUFFIN, Presiding Judge.

Regions Bank sued Barkatali Charania, asserting claims under a guaranty agreement. The trial court granted the bank's motion for summary judgment. Charania appeals, contending that there are factual issues as to whether the guaranty should be reformed to correct a mutual mistake and that the bank failed to prove its damages. For reasons that follow, we affirm, but reverse in Division 2.

Summary judgment is appropriate where the evidence of record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] On appeal, we review a trial court's grant of summary judgment de novo.[2]

Viewed in this manner, the record shows, and the parties do not dispute, that on October 17, 1997, Charania executed a guaranty agreement in favor of Regions Bank. The guaranty clearly states that Charania's monetary obligation under the agreement is $484,000, *"plus twenty percent (20%) of any Liabilities of the principal arising from or relating to said principal sum."*[3] The agreement also states that

THE UNDERSIGNED'S EXECUTION OF THIS GUAR-ANTY WAS NOT BASED ON ANY FACTS OR MATERI-

---

[8] See *Helmer,* supra; *McCants v. State,* 255 Ga. App. 133, 134 (1) (564 SE2d 532) (2002); *Copeland v. State,* 224 Ga. App. 402, 403 (480 SE2d 623) (1997).

[1] OCGA § 9-11-56 (c).

[2] See *Moore v. ECI Mgmt.,* 246 Ga. App. 601 (542 SE2d 115) (2000).

[3] (Emphasis supplied.)

ALS PROVIDED BY BANK, NOR WAS THE UNDER-
SIGNED INDUCED TO EXECUTE THIS GUARANTY BY
ANY REPRESENTATION, STATEMENT OR ANALYSIS
MADE BY THE BANK.

The guaranty is related to a promissory note executed between the bank and Airport Hotel Ventures, LLC (Hotel Ventures) in the original face value of $2,420,000 to repay a loan. The guaranty identifies the "Principal" as Hotel Ventures and provides that Charania guarantees "the full and prompt payment of all present and future liabilities of the Principal to the Bank."

On February 15, 2000, the bank filed suit against Hotel Ventures and several guarantors, including Charania, alleging that Hotel Ventures was in default under the promissory note and seeking the appointment of a receiver.

On March 2, 2001, the bank filed a motion for summary judgment against Charania, asserting claims under the guaranty agreement.[4] In support of its motion, the bank attached the affidavit of Michael Flanagan, its vice-president. Flanagan, based on his own personal knowledge and a review of certain attached business records, testified that as of February 22, 2001, Charania owed the bank $1,187,824.65, which included $484,000 plus 20 percent of the liability of Hotel Ventures under the promissory note. The amount also included interest and late fees calculated under the agreement, and attorney fees calculated under OCGA § 13-1-11.

Charania responded to the motion, asserting that the trial court should reform the guaranty due to a mutual mistake of fact and that the bank had not proved its damages. Charania also moved to strike the affidavit of Flanagan, asserting that it did not attach business records "other than exhibits to the pleadings" and that it contained conclusions and legal opinions.

Prior to the summary judgment hearing, the bank filed a schedule recalculating the amounts owed based on the terms of the guaranty and underlying note. The bank also applied the net proceeds from the sale of the Hotel Ventures' property at issue to Charania's outstanding indebtedness to the bank. The amount of these proceeds was not in dispute. The schedule listed the total amount of Charania's debt as $675,865.46. Following the hearing, the court denied Charania's motion to strike and granted summary judgment to the bank in the amount of $675,865.46.

1. Charania argues that the trial court erred in granting summary judgment because there is a material issue of fact as to whether

---

[4] The other guarantors failed to answer the complaint, and the bank was awarded default judgments against them.

the guaranty should be reformed due to mutual mistake. Charania contends that he agreed to guarantee 20 percent of the loan plus 20 percent of any *interest*, not 20 percent of the *principal*, as set forth in the contract.

Charania admits that he read the guaranty at the closing. He raised a question about the meaning of the 20 percent referenced in the guaranty and was told, although he does not remember by whom, that it related to any accrued interest on the loan. He also stated that he was not represented by an attorney at the closing, but admitted that he could have hired his own attorney before signing. After questioning what the 20 percent meant, he did not attempt to change the guaranty to reflect his understanding; rather, he signed the guaranty as written.

A mutual mistake in an action for reformation means one in which both parties agree to the terms of the contract, but by mistake of the scrivener the true terms of the agreement are not set forth.[5] Charania has shown no evidence of a mutual mistake or that the scrivener made a mistake. "We are thus faced with the legal principle that once the agreement was reduced to writing, all negotiations antecedent thereto merge in the writing and the written agreement is thereafter binding on the parties even if the writing did not express the contract actually made."[6] Charania cannot simply ignore the language of the contract and instead rely on pre-contract representations to claim a mutual mistake.[7]

To the extent that Charania argues by implication that he relied on someone's representation at the closing that the 20 percent related solely to interest, despite the clear language of the guaranty, we find that this argument also fails to relieve Charania of his obligations. Charania does not claim fraudulent inducement, presumably because the guaranty, as mentioned earlier, specifically states:

THE UNDERSIGNED'S EXECUTION OF THIS GUARANTY WAS NOT BASED ON ANY FACTS OR MATERIALS PROVIDED BY BANK, NOR WAS THE UNDERSIGNED INDUCED TO EXECUTE THIS GUARANTY BY ANY REPRESENTATION, STATEMENT OR ANALYSIS MADE BY THE BANK.

And even assuming that the someone who allegedly made the comment was an officer of the bank, Charania cannot rely on a represen-

---

[5] See *Cox v. Smith*, 244 Ga. 280, 282 (260 SE2d 310) (1979).

[6] *Hurst v. McDaniel*, 159 Ga. App. 702, 704 (2) (285 SE2d 40) (1981).

[7] Id.

tation of the bank because he had no confidential or fiduciary relationship with the bank.[8]

Charania read the contract and signed it as written. When the terms of a contract are plain and unambiguous, we must enforce the contract as written, so long as it is within the bounds of the law.[9] Accordingly, we find that the trial court did not err in granting summary judgment in favor of the bank.

2. With respect to damages, Charania argues that the "schedule," which was introduced by the bank at the summary judgment hearing and which was relied upon by the trial court dollar for dollar, is inadmissible hearsay of counsel and is insufficient to prove the bank's damages. The bank asserts, on the other hand, that the schedule merely updates the Flanagan affidavit by applying the proceeds received from the sale of the Hotel Ventures' property (the amount of which was undisputed), and by recalculating the amounts owed for late fees and interest based on formulas set forth in the guaranty and underlying note and, in the case of attorney fees, by statute. We disagree only as to the post-closing interest rate.

Flanagan's affidavit sets forth a *pre-closing* per diem interest rate of $922, which is based on the underlying note and set forth in the schedule. However, the schedule also sets forth a *post-closing* per diem rate of $379.36. The bank states that "[o]ut of an abundance of caution, since Mr. Flanagan's affidavit provided a per diem interest rate for the pre-closing balance only, Regions assessed interest on the post-closing balance at a lesser interest rate composed of the legal rate of seven percent, plus the five percent default interest specified in the note." Although the remainder of the damages can be calculated on the basis of the record, we find no evidence in the record to support this post-closing rate.[10] Accordingly, we must reverse the grant of summary judgment as to damages and remand this case to the trial court for proceedings consistent with this opinion.

*Judgment affirmed in part and reversed in part. Smith, C. J., and Miller, J., concur.*

DECIDED NOVEMBER 19, 2003 —
RECONSIDERATION DENIED DECEMBER 8, 2003 — 

*Olim & Loeb, Jay E. Loeb, David A. Webster,* for appellant.

---

[8] Id. at 703.

[9] See *AXA Global Risks v. Empire Fire &c. Ins. Co.,* 251 Ga. App. 543, 546 (554 SE2d 755) (2001).

[10] See *Garrett v. Atlanta Bank &c. Co.,* 157 Ga. App. 103 (276 SE2d 152) (1981).

*Smith, Gambrell & Russell, Stephen M. Forte, Samira Jones*, for appellee.