**FIRST DIVISION
BARNES, P. J.,
GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 3, 2021**

# In the Court of Appeals of Georgia

A21A0174. AMERICAN SOUTHERN INSURANCE COMPANY
v. SPN TRANS, LLC. et al.
GO-007

GOBEIL, Judge.

American Southern Insurance Company ("ASIC") filed a petition for declaratory judgment in the trial court seeking a determination as to whether it was responsible for providing insurance coverage for a motor vehicle accident. Following a bench trial, the trial court found as a matter of law that at the time of the accident the truck driven by ASIC's insured was being used for personal reasons, and thus, ASIC was responsible for coverage for the accident under its non-trucking policy. ASIC now appeals, arguing that the trial court erred by: (1) failing to properly interpret the unambiguous language contained in the non-trucking policy to find that routine maintenance to the truck constitutes a business use; (2) ignoring this Court's

prior decisions, which define when a truck driver's actions are considered to be part of their trucking business versus for personal use; (3) ignoring the applicable federal regulations, which state that transporting a truck for maintenance does not constitute a personal use; (4) failing to consider the policy implications of its ruling on Georgia's trucking and insurance law; and (5) applying inadmissible evidence to its judgment. For the reasons that follow, we affirm.

> On an appeal from an entry of judgment following a bench trial, we apply a de novo standard of review to any questions of law decided by the trial court, but will defer to any factual findings made by that court if there is any evidence to sustain them. Nevertheless, if the trial court makes a finding of fact which is unsupported by the record, that finding cannot be upheld, and any judgment based upon such a finding must be reversed.

*Denapoli v. Owen*, 341 Ga. App. 517, 518 (801 SE2d 314) (2017) (citation and punctuation omitted). So construed, the record shows that Petrov Tchotrov is the owner and sole employee of SPN Trans, LLC ("SPN"). As part of its business operations, SPN owns and operates a 2003 Freightliner tractor (the "truck") and attached trailer, which it leased to motor carriers in order to haul cargo loads.

On March 16, 2016, SPN and FBM Express, Inc. ("FBM") entered into a twelve-month lease, creating a carrier-independent contractor relationship wherein

2

SPN served as the independent contractor hauling loads for FBM, the carrier. The lease contained an automatic one-year renewal provision, unless either party gave written notice of intent not to renew at least 30 days before its expiration. Section V of the lease, titled "Independent Contractor Warranty and Representation," included the following provision:

> [SPN] warrants and represents that it is the owner of every unit of leased equipment and that [FBM] shall have possession of the equipment during the term of this [l]ease. [SPN] further warrants that every such unit of leased equipment shall be in safe mechanical and operating condition, free of defects, properly licensed[,] and in full compliance with the Motor Carrier Safety Regulations of the U. S. Department of Transportation (DOT) and all other applicable laws, regulations[,] and ordinances of Federal, State or Municipal authorities having jurisdiction [as] of the date it is delivered to [FBM] and shall be maintained as such throughout the term of this [l]ease."

The lease required FBM to secure insurance coverage for any claims for when the truck was being operated for business purposes on behalf of FBM, which was done through a policy issued by Spirit Commercial Auto RRG ("Spirit"). The lease further required SPN to obtain insurance for non-trucking liability that would cover SPN and Tchotrov when the truck was not being used for FBM business. SPN secured this required coverage by purchasing a commercial non-trucking liability

3

insurance policy with ASIC (the "Policy"), which contained a $1,000,000 limit for any one accident or loss. The Policy's Certificate of Insurance contained the following exclusions from coverage, including when the truck: "[i]s being operated, maintained or used to carry property in any business or en route for such purpose"; "[i]s under [FBM] direction, control[,] or dispatch"; or "[i]s not under 'permanent lease' with [FBM]."

As relevant here, on December 23, 2016, Evan Parrish was riding his motorcycle when he was struck by Tchotrov, who was driving the truck without the trailer. The truck left the scene, and Tchotrov initially denied knowledge of the accident. However, he admitted that he drove the truck on the day of the accident to have it repaired at an acquaintance's house. The acquaintance, a mechanic, intended to install a new air compressor in the truck at no charge. According to Tchotrov, FBM later learned that the truck had been involved in an accident and then alerted Tchotrov of this fact.

On January 5, 2017, ASIC learned of the December 23, 2016 accident involving the truck. ASIC's counsel sent SPN written notice on January 27, 2017,

4

indicating that ASIC was "investigating this matter subject to a full reservation of its rights regarding coverage for this matter" under the Policy it had issued to SPN.

In mid-December, before the accident, Tchotrov had contacted the president of FBM to discuss terminating the lease. According to Tchotrov, they agreed that SPN would work for FBM through the end of 2016. FBM countered that Tchotrov quit on December 22, 2016, and did not haul another load for FBM after that date.

On January 30, 2017, FBM sent Tchotrov a notice of the termination of the lease with a Release of Equipment form, back-dating the termination to December 22, 2016, the day before the accident. In her deposition, FBM's president testified that the termination notice was sent on December 22, 2016. The form sent on January 30, 2017, suggests that it was signed by Tchotrov on December 22, 2016, but Tchotrov insisted that he did not sign it until January 30, 2017, when he opened the email from FBM.

ASIC filed a petition for a declaratory judgment in April of 2017, naming SPN, Tchotrov, and Parrish as respondents.[1] In its petition, ASIC sought a determination

---

[1] ASIC later filed a motion for leave to amend its petition to add FBM as a party respondent, which the trial court granted. ASIC then filed a first amended petition for declaratory judgment, and completed service on FBM. After FBM failed to file a timely response, ASIC filed a motion for default judgment, which the trial court granted. FBM is not a party to the instant appeal.

that any potential claims raised in connection with the accident would not be compensable under the terms of the Policy issued to SPN. Approximately a year later, ASIC moved for summary judgment, arguing in pertinent part that neither SPN nor Tchotrov was entitled to coverage as neither was an insured under the Policy because a valid long term lease with a motor carrier was not in place when the accident occurred, which was a policy coverage requirement.

The trial court denied ASIC's motion for summary judgment, concluding that there remained a disputed issue of fact as to whether SPN was still under a valid long term lease with FBM in light of the contentions of each party as to how and when the lease terminated. The court also stated that any assertion by ASIC that there was an oral agreement by FBM and SPN to terminate the lease on December 22, 2016, failed because retroactive cancellation of insurance is against public policy. The trial court certified its order for immediate review. ASIC filed an application for interlocutory review, which we denied. See Case No. A19I0060 (denied Oct. 26, 2018).

After a bench trial, the trial court issued a final judgment, ruling that ASIC was liable to provide coverage to SPN and Tchotrov in connection with the accident under the terms of the Policy. Specifically, the court found that: (1) the long-term lease between SPN and FBM had not terminated prior to the December 23, 2016 collision

6

between Tchotrov and Parrish, as this would be "contrary to the applicable legal precedent in Georgia as well as public policy"[2]; and (2) there was no indication that Tchotrov was "under orders" from FBM or engaged in trucking business on behalf of FBM at the time of the collision as he was driving the truck to the home of an acquaintance to obtain help with the repair of a compressor on the truck. The instant appeal followed.

In several interrelated enumerations of error, ASIC argues that the trial court erred in concluding that the Policy provides coverage for damages stemming from the December 23 accident. The crux of ASIC's contention is that because Tchotrov was driving the truck to get its air compressor replaced at the time of the accident, this constituted a business use excluded from the scope of the coverage under the terms of Policy. We disagree for the reasons explained below.

1. ASIC contends that the trial court erred in failing to properly interpret and apply the Policy's unambiguous language, which demanded a judgment in its favor under the laws of contract construction.

Under Georgia law,

---

[2] ASIC has not challenged this ruling on appeal.

7

[i]t is well settled that insurance policies, even when ambiguous, are to be construed by the court, and no jury question is presented unless an ambiguity remains after application of the applicable rules of contract construction. Because insurance policies are contracts of adhesion, drawn by the legal draftsman of the insurer, they are to be construed as reasonably understood by an insured. Exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms.

*First Financial Ins. Co. v. American Sandblasting Co.*, 223 Ga. App. 232, 232-233 (1) (477 SE2d 390) (1996) (citations and punctuation omitted) (physical precedent only). "The insurer, in preparing the language of its policy, has the burden of using language that is clear and precise." *Ga. Farm Bureau Mut. Ins. Co. v. Meyers*, 249 Ga. App. 322, 324 (548 SE2d 67) (2001). "The test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean." *U. S. Fire Ins. Co. v. Capital Ford Truck Sales*, 257 Ga. 77, 78 (1) (355 SE2d 428) (1987) (citation and punctuation omitted). "[I]f a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous, and the statutory rules of contract construction will be applied." *American Strategic Ins.*

8

*Corp. v. Helm*, 327 Ga. App. 482, 485 (759 SE2d 563) (2014) (citation and punctuation omitted).

As relevant here, the Business Auto Coverage endorsement in the Policy provided:

> [ASIC] will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by [an] "accident" involving the *personal use* of a "covered commercial auto(s)" or "trailers" owned, maintained, or used as a "covered commercial auto(s)".

The Policy, however, expressly excluded liability coverage for

> [a] "covered commercial auto(s)" or "trailer(s)" when being used, or for any maintenance when *under orders* from or after being dispatched by any trucking company or lessee of such "covered commercial auto(s)" until you have finished the assignment including return to your initial point of dispatch or your principle place of garaging, whichever comes first.

ASIC asserts that, because Tchotrov was driving the truck to get its air compressor replaced — as required to keep the truck in good working order under the terms of its lease with FBM — he was using the truck for "trucking business," and not for his personal use, at the time of the accident. As a result, ASIC contends it was not liable

9

to provide coverage under the terms of the Policy. According to ASIC, the trial court erred by focusing on whether Tchotrov was acting "under orders" from FBM, while failing to address whether the truck was being "maintained" as it was being driven to be repaired at the time of the accident, and thus, being used "in the business of" FBM.

At trial, Tchotrov testified that the truck belonged to him, and thus "if [he found] something [ ] wrong with the tractor and the trailer, [he would] have to fix it." He further clarified that FBM did not pay for repairs on the truck, nor did FBM instruct him to get the truck fixed on December 23, 2016, the date of the accident. In fact, Tchotrov had not informed FBM that he was taking the truck to be repaired that day. Tchotrov explained that he was not hauling loads on the date of the accident, as he had hauled his last load for FBM the previous day, December 22, 2016. On the day of the accident, Tchotrov drove just the truck, without the trailer attached, to have the air compressor replaced at an acquaintance's house. Tchotrov's driver's logs, which he was required to complete under the Federal Motor Carrier regulations, showed that he did not drive the truck at any other time that day. Tchotrov picked up the truck from his acquaintance's house the next day, December 24, and drove home.

ASIC counters that Tchotrov was clearly engaged in trucking business as he was on his way to get the truck repaired at the time of the accident. In support, ASIC

10

highlights that Tchotrov's driver's daily log for December 23, indicates that he was "on duty" at the time of the accident, and completed a pre-trip inspection of his truck, which was part of his typical routine before driving the truck for a carrier. Tchotrov also testified that he did not use the truck for personal use; he had a separate vehicle for that purpose.

The trial court rejected ASIC's arguments, relying on a Minnesota Supreme Court case, *Protective Ins. Co. v. Dart Transit Co.*, 293 Minn. 402 (197 NW2d 668) (1972). In that case, the policy in question contained the following exclusion: "No coverage is granted if the equipment is operating under orders of any trucking company." Id. at 403. The owner/independent contractor began experiencing trouble with his oil pressure while on the road and made an appointment with a mechanic to have repairs done. Id. An accident occurred while the driver was en route from his home to a repair shop in anticipation of hauling a load for the carrier as soon as the repairs were completed. Id. The trial court agreed with the insurance company that the driver was operating "under orders" from the carrier since the lease required him to keep his tractor in good running order, and thus, the insurance company was under no obligation to provide coverage. Id. at 403-404. The Supreme Court of Minnesota reversed, explaining as follows:

> [t]he fact that the lease provided that the equipment would be under the exclusive control of the lessee, who was to assume full responsibility to the public for its operation, merely reflected a requirement of the law that the lessee be liable to the public for the operation of the equipment. It did not mean, as between the parties, that the lessor was "under orders" of the carrier 24 hours a day. [The driver] was not under orders from [the carrier] to repair his equipment.

Id. at 404. Although we have not found a Georgia case precisely on point with the instant facts, we find the reasoning in *Protective Ins.* helpful in this case and consistent with our case law. There is no dispute that Tchotrov was driving the truck to the home of an acquaintance to repair the truck at the time of the accident. Similar to *Protective Ins.*, the lease in the instant case required that SPN ensure that the "leased equipment shall be in safe mechanical and operating condition, free of defects, properly licensed and in full compliance with the Motor Carrier Safety Regulations of the U. S. Department of Transportation (DOT) and all other applicable laws . . . ." As noted by the trial court, and supported by Tchotrov's testimony at trial, Tchotrov was not "under orders" from FBM to repair the truck at the time of the collision; rather Tchotrov "was simply abiding by the general maintenance responsibility established within the lease itself" to maintain the truck. Additionally, ASIC presented no evidence to show that Tchotrov was engaged in the trucking

12

business of FBM at the time of the collision, such as picking up or dropping off a load. In fact, Tchotrov testified that he drove the last load for FBM on December 22, the day before the accident.

In light of the foregoing, including the terms of the Policy and Tchotrov's testimony, we conclude that the trial court was authorized to find that Tchotrov was not driving the truck for business reasons on behalf of FBM at the time of the accident, and therefore, ASIC was liable to provide coverage under the terms of the Policy. See *Gibson v. Gibson*, 301 Ga. 622, 624 (801 SE2d 40) (2017) ("In reviewing a bench trial, we view the evidence in the light most favorable to the trial court's rulings, defer to the trial court's credibility judgments, and will not set aside the trial court's factual findings unless they are clearly erroneous.").

2. ASIC argues that the trial court erred in ignoring applicable Georgia law, which clearly excludes coverage under a non-trucking policy for accidents "while the driver was engaged in trucking business" or "under orders" from the carrier. ASIC misconstrues the holdings of our cases in this area.

In *AXA Global Risks v. Empire Fire & Marine Ins. Co.*, we found that the driver of a truck was not engaged in the carrier's business, but rather a "personal errand," where the accident occurred over a long weekend after the driver completed

his last run. 251 Ga. App. 543, 544-547 (554 SE2d 755) (2001). Similar to the instant case, the truck driver in *AXA* had a commercial auto policy which provided "liability coverage for 'non-trucking use' of the tractor and excluded coverage for business use." Id. at 544. In *AXA*, we rejected "the trial court's conclusion that *any* use with permission of the [carrier] is by definition use in the [carrier's] business." Id. at 546 (emphasis in original). For example, we highlighted that "[a] driver bobtailing[3] a tractor may be using the tractor in the [carrier's] business, as when he is taking the tractor to, or returning from, a repair shop." Id. On the other hand, "a driver may use a tractor, although with the [carrier's] permission, for wholly personal reasons, such as driving the tractor for personal transportation after completing one job and before beginning another." Id. at 547. Contrary to ASIC's contention, however, we did not categorically hold that every instance in which a truck is driven for repairs constitutes a business use of the vehicle. Rather than solely focusing on whether the driver's use of the vehicle was with permission from the carrier, we explained that the more relevant inquiry is whether (1) the driver was "under dispatch" as that phrase is used in the trucking industry; (2) there were any restrictions on the driver's activities; and

---

[3] "Bobtailing" refers to "driving [a tractor] with no trailer attached." *AXA Global Risks*, 251 Ga. App. at 543.

14

(3) whether the trip was part of the driver's "regular work pattern or operational routine." Id. Applying these factors, we concluded that the driver in *AXA* "was not acting in the scope of his employment with" the carrier at the time of the accident. Id.

We have addressed policies similar to that in *AXA* and the issue of trucking business exclusions in non-trucking use policies in at least two other cases. In *Hot Shot Express, Inc. v. Assicurazioni Generali, SPA*, the driver collided with a van while en route from one trucking terminal in Florida to which he had just delivered a load to another freight terminal in Florida where he hoped to pick up an additional load with which to drive home to Ohio. 252 Ga. App. 372, 373-375 (556 SE2d 475) (2001). Under these facts, we found that the driver was still engaged in trucking business at the time of the accident. Id. at 374. We distinguished *AXA* and found that even though the driver was not under dispatch, he was en route for the purpose of picking up another load; he was clearly within his "work pattern" and "operational routine"; and it could not be said that the trip from the original terminal to the freight terminal in Ocala was not related to the trucking company's business. Id. at 374-375.

Similarly, in *Liberty Mut. Fire Ins. Co. v. Axis Surplus Ins. Co.*, the accident occurred while the driver was returning to the terminal after dropping off a load. 294 Ga. App. 417, 418 (669 SE2d 219) (2008). The insurer asserted that the accident was

15

not covered under its policy because the driver had already delivered his load, and thus was no longer engaged in trucking business. Id. at 419 (2). We rejected the insurer's argument, highlighting that unlike the driver in *AXA*, this driver had not "completed his run" by returning to the carrier's yard and dropping off an empty trailer. Id. (punctuation omitted). Rather, the driver was en route to the usual end of his run, but he had not yet reached it, and thus was still acting within his regular work pattern or operational routine. Id. at 419-420 (2).

Turning to the instant case, as previously discussed in Division 1, based on the totality of the circumstances — including that Tchotrov was not "under dispatch" by FBM at the time of the accident, there were no restrictions on his activities that day, and driving to a friend's house to get a air compressor replaced was not part of his regular work pattern — the trial court did not err in finding that ASIC was liable to provide coverage under the Policy as Tchotrov was not engaged in trucking business at the time of the accident. See *AXA Global Risks*, 251 Ga. App. at 546-547.

3. ASIC contends that the trial court erred in ignoring the applicable federal regulations in considering whether transporting a commercial vehicle for maintenance qualifies as a personal activity. In support of its contention, ASIC points to question 26 of regulation 395.8 of the Federal Motor Carrier Safety Administration

("FMCSA"), which lists examples of when the use of a commercial vehicle does not qualify as personal, including "[t]ime spent transporting [the vehicle] to a facility to have vehicle maintenance performed." 49 CFR § 395.8, Question 26, (b) (5), https://www.fmcsa.dot.gov/regulations/title49/section/395.8 (last visited April 16, 2021).

ASIC's obligations, however, are governed by the terms of the Policy. The terms of the Policy do not define whether Tchotrov's driving the truck to his acquaintance's house for repairs constitutes a "personal use." Indeed, the Policy does not define the term "personal use." Importantly, the Policy does not reference the FMCSA regulations in outlining the scope of its coverage. Based on the terms of the Policy and Tchotrov's testimony, the trial court did not err in finding that Tchotrov was not driving the truck for business reasons on behalf of FBM at the time of the accident.

4. ASIC alleges that affirming the trial court's judgment would "upend trucking law" as driving a truck for repairs constitutes a business use. Our holding in this case is not intended to create a bright-line rule that driving a truck for repair purposes can never constitute a business use. Rather, based on the specific facts of this appeal, we

conclude the trial court was authorized to find that Tchotrov was not driving the truck for business reasons on behalf of FBM at the time of the accident.

5. Finally, ASIC asserts that the trial court considered "irrelevant and inadmissible evidence" in arriving at its final judgment.

FBM's trucking insurance provider — which was responsible for coverage if Tchotrov was driving the truck for FBM's business at the time of the accident — was not identified at trial. In a post-trial memorandum of law, Parrish identified the insurer as Spirit, and indicated that the entity had been placed into receivership and liquidation. ASIC objected to this information as "wholly irrelevant" to whether ASIC was responsible for coverage for the accident, as well as prejudicial. In its final judgment, the trial court "note[d] that Spirit appears to be in a permanent receivership . . . and perhaps insolvent." Nevertheless, the court immediately clarified that "this factor has no bearing whatsoever on this [j]udgment." We have no reason to second guess this assertion. See *CSX Transp. v. McDowell*, 294 Ga. App. 871, 873 (1) (a) (670 SE2d 543) (2008) ("Generally, a trial court will be presumed to have performed its duties."). As a result, ASIC's contention that the trial court's consideration of

18

irrelevant and inadmissible evidence was harmful to the outcome of the proceeding

is without merit.[4]

      *Judgment affirmed. Barnes, P. J., and Markle, J., concur*.

---

[4] In its reply brief, ASIC seeks to strike a portion of the appellees' brief, to the extent that it suggests that ASIC's counsel "was party to or participated in a criminal conspiracy" with respect to the circumstances surrounding the termination of the lease between FBM and SPN. Because ASIC moved to strike a portion of the appellees' brief within the body of its brief, its request is denied. See Court of Appeals Rule 41 (b) ("All motions and responses to motions shall be filed as separate documents, and not as joint, compound, or alternative motions."); *Ridley v. Turner*, 335 Ga. App. 108, 113 (6) (778 SE2d 844) (2015) (refusing to consider a party's motion for frivolous-appeal penalty when same was not filed as a separate document).