**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 12, 2015**

# In the Court of Appeals of Georgia

A15A0769. RIDLEY et al. v. TURNER et al.

ANDREWS, Presiding Judge.

The appellees, Charles and Tim Turner, commenced this trespass and nuisance action against the appellants, Donald and Ronald Ridley, alleging erosion from grading and construction on the Ridleys' property caused sediment deposits in the Turners' pond. A jury awarded the Turners $80,000 on the trespass claim and $10,000 on the nuisance claim, and this appeal followed the trial court's denial of the Ridleys' motion for new trial.

The Turners' property was comprised of approximately 40 acres with a six-and-a-half acre pond, which they purchased for $100,000 in 2003. The Ridleys subsequently bought the adjacent property and started preparing the site for a propane business some time between 2004 and 2005. The actual construction of the building

began in late 2007. Heavy rains for three days in November 2007 during the construction dumped sediment from the Ridleys' property into the Turners' pond.

Kevin Dallmier, an environmental specialist with the Georgia Environmental Protection Division, inspected the site after the heavy rains, and found some best management practices, such as silt fence and check dams, were either absent or improperly installed on the Ridleys' property. Following Dallmier's inspection, the Ridleys voluntarily stopped construction and undertook to remediate the site; following an enforcement conference on November 13, 2007, Dallmier felt that the Ridleys had stabilized the property.

In July 2008, William Griffin, an environmental assessment project manager with Golder Associates, evaluated the site to assess the sedimentation, determine its sources, how much was there, its location on the property, and how much it would cost to remove it. He determined the pond contained a total of approximately 12,000 cubic yards of sediment, but only 142 cubic yards were attributable to the erosion from the Ridleys' property. Griffin estimated various regulatory permits to remove the sediment would range from $25,000 to $40,000, and that it would cost approximately $156,000 to remove the new sediment and approximately $1.78

million to remove all the sediment in the pond. He originally estimated a cost of $32,840 to excavate the new silt.

Griffin stated that although not all the new silt could be removed due to the difficulty in accessing it, he still felt cleaning out as much as possible would be a benefit because it would help prevent mobilizing the silt when the pond was at full pool. But he explained removing just the new silt presented a difficult challenge due to the necessary management of water sources, sloppy material coming out of the pond, and disturbance of the sediment resulting in a very big mess. Griffin charged the Turners $28,000 for his assessment.

Charles Turner testified that he and his brother purchased the property intending to develop a subdivision featuring the pond. He claimed the sedimentation in 2007 ruined their use of the pond in that (1) they could no longer use it for recreational fishing because they had to keep the water level low to prevent silt escaping downstream, and (2) it frustrated their development of the property.

Donnie Ridley testified that he was familiar with local real estate values because he had bought and sold multiple properties in the area over the past five years. He placed a value on the Turners' property ranging from $2,500 to $3,000 per acre before the 2007 event. However, the trial court would not allow him to state an

opinion as to the property's value after the sedimentation, because Ridley hadn't actually viewed the property site after the damage occurred and thus had no foundation for his opinion.

Jared Muse, a heavy equipment operator testifying on behalf of the Ridleys, opined that removing 142 cubic yards of sediment from a total accumulation of 12,000 cubic yards would make no difference in the quality of the pond. He estimated a cost of $38,500 to remove 142 cubic yards of the silt.

1. On appeal, the Ridleys' primary issue concerns the appropriate measure of damages applicable, i.e., cost of repair versus difference in market value of the property before and after the damage. In this regard, they contend the trial court erred in not allowing them to present expert testimony about the difference in market value of the property.

A pretrial order was entered September 14, 2012. Mistakenly believing the pretrial order permitted the addition of witnesses within five days of trial, the Ridleys without motion filed an amendment to the pretrial order on September 27, 2012, adding an expert witness regarding the fair market values of the property. At trial on October 22, 2012, when informed the pretrial order actually did not reserve that right

4

to add witnesses, the trial court vacated the amendment and disallowed the expert witness's testimony.

OCGA § 9-11-16 (b) provides, in pertinent part, a pretrial order "controls the subsequent course of the action unless modified at the trial to prevent manifest injustice." "[I]t generally is recognized that, unless the pretrial order is modified at or before trial, a party may not advance theories or offer evidence that violate the terms of the pretrial order." (footnotes omitted) *Dept. of Human Resources v. Phillips*, 268 Ga. 316, 318 (1) (486 SE2d 851) (1997). Whether to allow the testimony of a witness not named in a pretrial order lies within the discretion of the trial court. See *Nease v. Buelvas*, 198 Ga. App. 302(401 SE2d 320) (1991).

In this case, the expert witness had never been disclosed during discovery. Counsel for the Ridleys mailed counsel for the Turners a copy of the amendment on September 27, 2012, a little more than three weeks before the trial, but counsel for the Turners had been unable to contact the new witness and was unable to interview or depose him before the trial date on October 22, 2012. Under these circumstances, we find no abuse of discretion or manifest injustice in the trial court's decision to vacate the pretrial order and exclude the proposed witness's testimony.

2. The trial court instructed the jury that "[under] Georgia law, cost of repair and diminution of value are alternative, although sometimes interchangeable, measures of damages in trespass cases. The plaintiffs may choose to present their case using either or both methods of measuring damages depending on the particular circumstances." The Turners focused on cost of repair as the measure of damages.

The Ridleys assert the proper measure of damages in this case was the difference in the market value of the property before and after the sedimentation occurred. To that end, the Ridleys contend the trial court erred in failing to charge the jury to apply that measure of damages, and also failing to instruct the jury that it may not apply the cost of repair as a measure of damages if the restoration costs far exceed the fair market value of the property involved.

> Georgia law recognizes that the cost to repair or restore land may be an appropriate measure of damages as long as restoration would not be an 'absurd undertaking.' *Atlanta Recycled Fiber Co. v. Tri-Cities Steel Co.*, 152 Ga. App. 259 (3) (262 SE2d 554) (1979); *Southern Ry. Co. v. Wooten*, 110 Ga. App. 6 (5) (137 SE2d 696) (1964). This is true even though repair costs exceed the diminution in value. E.g., *NEDA Constr. Co. v. Jenkins*, 137 Ga. App. 344 (4) (223 SE2d 732) (1976).

*Ga. Northeastern R. v. Lusk,* 277 Ga. 245, 247 (587 SE2d 643) (2003). But the restoration costs must bear some proportion to the injury sustained. Id.

6

The cost of repair is an appropriate measure of damages where a pond is sedimented as a result of grading and clearing on adjacent property. See *Payne v. Whiting*, 140 Ga. App. 390, 391 (2) (231 SE2d 796) (1976). Provided, however, the amount of damages should not exceed the value of the property. *Louisville & Nashville R. Co. v. Hughes*, 143 Ga. 206, 208 (5) (84 SE 451) (1915).

In the instant case, the Turners sought to have their pond restored to its pre-damaged condition. The evidence adduced at trial showed permits for repairing the pond would range from $25,000 to $40,000. The Turners paid $28,000 for the engineering services necessary to determine the extent of the sedimentation damage, and the estimate for removing the amount of silt deposited into the Turners' pond attributable to the land disturbance on the Ridleys' property ranged from $32,840 to $156,000. So the $80,000 trespass and $10,000 nuisance damages awarded by the jury fell within the range shown by the evidence, and did not exceed the value of the Turners' property.

In actions for injury to real estate, the Supreme Court "has consistently held that the measure of damages in such cases is intended to place an injured party, as nearly as possible, in the same position it would have been if the injury had never occurred." *Royal Capital Dev. v. Maryland Cas. Co.*, 291 Ga. 262, 264 (1) (728 SE2d

7

234) (2012). In some cases, the cost of repair may be the most accurate and equitable measure of damages to accomplish that goal.

Accordingly, we find the trial court did not err in refusing to limit the measure of damages to diminution of value. Also, inasmuch as the jury's award did not exceed the value of the subject property, there was no harm in the failure to instruct the jury on that limitation on restoration costs as the measure of damages.

3. The Ridleys contend the trial court erred in denying their motion for directed verdict on both the issue of trespass damages and the issue of nuisance damages. With regard to the issue of trespass damages, the Ridleys argued that they were entitled to directed verdict because there was no evidence showing the difference between fair market value before and after the trespass. In short, their motion for directed verdict was predicated on their same contention rejected above, i.e., that the only proper measure of damages was the diminution of value. For that reason, the trial court did not err in denying the motion for directed verdict on the trespass issue.

Regarding the nuisance claim, the Ridleys contend the trial court should have directed verdict for them, on the grounds the runoff from their property into the Turners' pond was an isolated, single incident and therefore did not constitute a continuing nuisance. "A nuisance is anything that causes hurt, inconvenience, or

8

damage to another." OCGA 41-1-1. "'The whole idea of nuisance is that of either a continuous or regularly repetitious act or condition which causes the hurt, inconvenience or injury. A single isolated occurrence or act, which if regularly repeated would constitute a nuisance, is not a nuisance until it is regularly repeated.'(Citation and punctuation omitted.) *Ingram v. Baldwin County*, 149 Ga. App. 422, 423 (254 SE2d 429) (1979)." *Barnes v. St. Stephen's Missionary Baptist Church*, 260 Ga. App. 765, 769 (580 SE2d 587) (2003).

However, the Ridleys' grading and construction on their property that resulted in the runoff and sedimentation of the Turners' pond was not a single incident. That activity and/or condition continued for several days until the Georgia Environmental Protection Division required the Ridleys to remediate the condition. The Turners introduced evidence showing their pond was tortiously invaded by dirt escaping from the Ridley's property over the course of several days before the remediation. For that reason, the trial court did not err in denying the motion for directed verdict on the nuisance claim. *Kiel v. Johnson*, 179 Ga. App. 43, 44 (1) (345 SE2d 131) (1986).

4. The Ridleys also enumerate as error the trial court's disallowing Donnie Ridley's lay opinion testimony about the fair market value of the Turner property after the sedimentation. OCGA § 24-9-66, in effect at the time of trial in this case,

9

authorized the admission of lay opinion testimony concerning fair market value, if the witness had an opportunity for forming a correct opinion. *The Martha K. Wayt Trust v. City of Cumming*, 306 Ga. App. 790, 791 (1) (702 SE2d 915) (2010). "The question of whether a witness has established sufficient opportunity for forming a correct opinion on value or has stated a proper basis for expressing that opinion is within the trial court's discretion." Id. at 791. In the instant case, the trial court observed that Ridley had never inspected the Turners' property after the damage, had never built a lake, and had not observed any of the changes to the Turners' property resulting from the heavy rains in 2007. Considering those factors, the trial court concluded Ridley did not have the opportunity for forming a valid opinion about the value of the property after the damage, and we find no abuse of discretion with that conclusion.

5. The Ridleys contend the trial court erred in denying their motion for new trial on the general grounds, and specifically on the ground the damages award was grossly excessive. The trial court re-weighed the evidence pursuant to OCGA §§ 5-5-20 and 5-5-21, but did not find the evidence to preponderate heavily against the verdict. As discussed in Division 2 above, the jury award fell within the range of evidence concerning the cost of repairing the Turners' pond, and the trial court thus

10

did not abuse its discretion in denying the Ridleys' motion for new trial on the general grounds.

6. In their brief, the Turners incorporated a motion for frivolous appeal damages pursuant to Court of Appeals Rule 15 and OCGA § 5-6-6. However, we do not consider the motion, as it was not filed as a separate document as required by Court of Appeals Rule 41 (b). *Harden v. Young*, 268 Ga. App. 619, 620 (606 SE2d 6) (2004).

*Judgment affirmed. Miller, J., concurs. Branch, J., concurs in Divisions 1, 2, 4, 5 and 6, and in the judgment.*