**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 26, 2016**

# In the Court of Appeals of Georgia

A16A0734. GARDNER et al. v. CLARK.

RICKMAN, Judge.

Following the death of their mother in a fire at a mobile home she was leasing, Quanterrious Gardner, individually and as administrator of his mother's estate, and his siblings[1] filed suit against Randall T. Clark,[2] the owner of the mobile home, alleging claims of wrongful death, pain and suffering, funeral expenses, and punitive damages. The trial court granted Clark's motion for a directed verdict as to all of the appellants' claims. Gardner and his siblings contend that the trial court erred by granting Clark's motion for directed verdict. For the following reasons, we agree and reverse.

---

[1] Artie, Quateshia, and Charles Westbrook.

[2] Two separate lawsuits were filed and then, subsequently, were consolidated.

A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. A grant of directed verdict is a ruling that the evidence and all reasonable deductions therefrom demand a particular verdict. It is illogical to say such a finding will be upheld if there is any evidence to support it. A grant of directed verdict can be upheld only where we determine that all the evidence demands that verdict. This requires a de novo review. It is correct to say that a directed verdict cannot be granted if there is any evidence to support a contrary verdict, but there cannot be 'some evidence' that all the evidence demands a particular verdict.

(Footnote and punctuation omitted.) *Moore v. Singh*, 326 Ga. App. 805 (755 SE2d 319) (2014).

So viewed, the evidence presented at trial showed that Gardner's mother, Gloria Westbrook, leased a mobile home from Clark. Westbrook moved into the mobile home before the utilities had been turned on. On a cold night in November 2009, Gardner and his uncle started a fire in Westbrook's fireplace. At some point, Gardner went back to his residence and observed that Westbrook's mobile home was on fire. Gardner's fiancee called 911. Gardner ran back to Westbrook's mobile home and observed that her mobile home was "fully engulfed" in flames.

2

Gardner testified that Westbrook died in the fire. Gardner also testified that prior to the fire, Westbrook had asthma, sleep apnea, and could only walk short distances without the assistance of the cane, but was otherwise in good health.

Clark testified that he agreed that Westbrook died as a result of the fire at the mobile home he owned. Clark also testified that it was his responsibility to check the mobile homes he leased to ensure that they are compliant with the current codes and that tenants rely on him to rent safe homes. Clark agreed that it was important for mobile homes to be equipped with working smoke detectors because "smoke detectors save lives." Clark testified that in the mobile home Westbrook leased, there were electric smoke detectors installed. Clark acknowledged that without electricity, electric smoke detectors would not work in Westbrook's mobile home. Clark testified that he was not certain what the Georgia law was with regard to battery operated smoke detectors. Clark admitted that it would be "irresponsible" for a landlord to be unaware of laws regarding the installation of smoke detectors.

An arson investigator, who was qualified as an expert in fire investigations, testified that he responded to the fire at the mobile home Westbrook was leasing. The investigator testified that he did not find any evidence of a hearth, which is a safety barrier, and that it was his opinion that smoke detectors were not present in the home

3

because he did a thorough search and was not able to locate any remnants of a smoke detector. The investigator agreed that a person is more likely to survive a fire if smoke detectors are present.

The investigator also testified that Westbrook was found in the corner of her bedroom. The investigator testified that when victims are found in the corner of a room it indicates to him that "the person was alive at the time of the fire and the person was trying to actually get out of whatever structure they were in." Westbrook sustained "charring and more burning to the lower extremities of [her] body." The investigator testified that he read Westbrook's autopsy report and learned that she died as a result of the fire.

At the close of Gardner and his siblings' case, Clark moved for a directed verdict, which the trial court granted. In its order granting the motion for directed verdict, the trial court found:

> At the close of the evidence offered by [Gardner and his siblings], [Clark] moved the court for an order directing a verdict in favor of [Clark] and entry of judgment for [Clark] and it appearing to the court that there is no conflict in any evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands, as a matter of law, a verdict for [Clark][.]

Gardner and his siblings contend that the trial court erred by granting a directed verdict in favor of Clark. Specifically, they allege that the trial court erred when it pronounced the following prior to entering a directed verdict, "[t]here is no evidence, no expert evidence as to the cause of death of Ms. Westbrook. And there has been no medical doctor that testified, no medical examiner, no anything that testified to the cause of death. It doesn't show that she didn't die from a heart attack or any other type thing."[3]

> [E]xpert evidence typically is not required to prove causation in a simple negligence case. However, expert evidence is required where a 'medical question' involving truly *specialized* medical knowledge (rather than the sort of medical knowledge that is within common

---

[3] Gardner also contends that the trial court erred when it announced from the bench that it was entering a directed verdict as to the estate's claim because "there is no evidence that [Gardner] is administrator of the estate." We agree. Gardner testified, without objection, that he filed a lawsuit on behalf of his mother's estate. Furthermore, a pre-trial order was filed in this case. Gardner's status as the administrator of his mother's estate was not listed as an issue in the case. "OCGA § 9-11-16 (b) provides, in pertinent part, a pretrial order 'controls the subsequent course of the action unless modified at the trial to prevent manifest injustice.' It generally is recognized that, unless the pretrial order is modified at or before trial, a party may not advance theories or offer evidence that violate the terms of the pretrial order." (Citation and punctuation omitted.) *Ridley v. Turner*, 335 Ga. App. 108, 110 (1) (778 SE2d 844) (2015); see also *Eagle Jets, LLC v. Atlanta Jet, Inc.*, 321 Ga. App. 386, 400 (8) (740 SE2d 439) (2013). Thus, the trial court erred to the extent that it directed a verdict in favor of Clark as to this issue.

5

understanding and experience) is needed to establish a causal link between the defendant's conduct and the plaintiff's injury.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622 (697 SE2d 779) (2010).

In *Cowart*, the Supreme Court of Georgia gave the following guidance regarding how to determine whether or not a simple negligence claim involves a "medical question" thus requiring expert testimony:

> The simple term 'medical question' may not be the best description of this concept, because its everyday meaning does not convey the distinction between cases where plaintiffs must come forward with expert evidence on causation and cases where they do not. In common parlance, a 'medical' question is any question of or connected with the practice or study of medicine. In this sense, almost *all* deaths could be said to involve 'medical questions' relating to causation. How many people could describe with precision how a gunshot wound to the head actually causes the death of a human being? But it does not require expert testimony for a lay jury to determine that a gunshot wound to the head of an otherwise healthy person who died shortly thereafter was the proximate cause of her death.

(Citation and punctuation omitted.) *Cowart*, 287 Ga. App. at 627 (2) (b).

6

It follows that expert testimony is not required for a lay jury to determine that a fire was the cause of death of an otherwise healthy woman who was found dead with "charring" and "burning" on her lower extremities, after a fire engulfed her mobile home. See *Donson Nursing Facilities v. Dixon*, 176 Ga. App. 700-701 (1) (337 SE2d 351) (1985) (trial court properly denied defendant's motion for directed verdict because expert testimony was not necessary to prove causation after plaintiff died in a fire); see also *Jordan v. Smoot*, 191 Ga. App. 74, 75 (1) (380 SE2d 714) (1989) (reversing a trial court's grant of directed verdict in a personal injury case because medical testimony was not required for a jury to determine whether an automobile accident caused the appellant's injury).

However, in this case, there was expert testimony about the cause of the victim's death. The arson investigator, who was certified as an expert, without objection from Clark, testified that based upon the location where the victim was found, it indicated to him that she was alive at the time of the fire and trying to escape the mobile home. Furthermore, the investigator testified, without objection, that he read Westbrook's autopsy report and that she died as a result of the fire. Additionally, Clark admitted that Westbrook died as a result of the fire.

7

Thus, the trial court erred by granting the motion for directed verdict. See *Moore*, 326 Ga. App. at 810 (1).[4]

*Judgment reversed. Barnes, P. J., and Boggs, J., concur.*

---

[4] Gardner and his siblings also contend that the trial court erred by failing to grant their motion in limine. However, as acknowledged by Gardner and his siblings in their brief, the trial court reserved ruling. "It is within the trial court's discretion to refuse to rule on a motion in limine and to reserve ruling on the admissibility of evidence until it is offered during trial." (Citation omitted.) *Morris v. Southern Bell Tel. & Tel. Co.*, 180 Ga. App. 145 (1) (348 SE2d 573) (1986). Thus, there was no error.